IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>L-3 COMMUNICATIONS INTEGRATED SYSTEMS, LP d/b/a L-3 COMMUNICATIONS MISSION INTEGRATION,<br><br>Defendant. | § § § § § § § § § § § § § § § | Civil Action No. 3:17-CV-0538-N |

## **MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order addresses Defendant L-3 Communications Integrated Systems, LP d/b/a/ L-3 Communications Mission Integration's ("L-3") motions to compel [27, 37]. For the reasons set forth below, the Court grants the motion to compel a mental examination of Connolly [27] and grants in part and denies in part the motion to compel signed authorization for the release of medical records [37].

### **I. ORIGINS OF THE DISPUTE**

This case arises from L-3's termination of its former employee Andrew Connolly. Plaintiff the Equal Employment Opportunity Commission (the "EEOC") alleges that L-3 violated the Americans with Disabilities Act, 42 U.S.C. § 12112 (the "ADA"), when it terminated Connolly because of his disability, major depressive disorder, and refused to grant

him a reasonable accommodation [41]. The parties are currently engaged in discovery. L-3 now moves to compel a mental examination of Connolly [27] and to compel the EEOC to produce a signed authorization for the release of medical records [37].

## II. THE COURT GRANTS L-3'S MOTION TO COMPEL A MENTAL EXAMINATION OF CONNOLLY

L-3 first moves to compel a mental examination of Connolly by its expert, Dr. Lisa Clayton. The Court grants L-3's motion.

### A. The Rule 35 Legal Standard

Under Federal Rule of Civil Procedure 35(a), a court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." FED. R. CIV. P. 35(a)(1). A court may order such an examination "only on motion for good cause and on notice to all parties and the person to be examined." *Id*. 35(a)(2). The order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." *Id*. "Rule 35 should be construed liberally in favor of discovery." *Branch v. Hoglo*, No. 4:13-CV-560-Y, 2015 WL 11120590, at *1 (N.D. Tex. Oct. 19, 2015) (citing *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204, 207 (N.D. Tex. 1996)). Indeed, requests for examinations under Rule 35 "should be denied only where no additional relevant information could be gained by an examination." *Branch*, 2015 WL 11120590, at *1 (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964)).

### B. The Court Grants L-3's Motion

The EEOC placed Connolly's mental condition in controversy when it filed this action, and L-3 has good cause for the mental examination it seeks. The Court thus grants L-3's motion to compel.

***1. The EEOC Placed Connolly's Mental Condition in Controversy.*** – To assert a *prima facie* claim under the ADA, the EEOC must show that Connolly (1) has a disability, or was regarded as disabled; (2) was qualified for the job; and (3) suffered adverse employment action because of his disability. *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). While it is undisputed that Connolly has a disability, he is nonetheless qualified for the job if (1) he could perform the essential functions of the job despite his disability or (2) a reasonable accommodation would have enabled him to perform the essential functions of the job. *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017).

The EEOC placed Connolly's mental condition in controversy when it asserted an ADA claim based on Connolly's mental condition. The parties apparently do not dispute the first element of the EEOC's ADA claim, which concerns whether Connolly has a disability. But the second element of the EEOC's claim – whether or not Connolly was qualified for the job – also implicates Connolly's mental condition. This second element focuses on whether an individual can still do the job she is employed to do *despite* the disability, with or without a reasonable accommodation. In other words, Connolly was not qualified for the job at the time of his termination – and L-3 can defeat the EEOC's ADA claim – if his major

depressive disorder affected his mental condition to the point that he could not perform the functions of his job even with a reasonable accommodation. Thus, both the EEOC's ADA claim and L-3's defenses to that claim turn on Connolly's mental condition. The EEOC has placed Connolly's mental condition in controversy such that a mental examination under Rule 35 is appropriate.

*2. L-3 Has Shown Good Cause for a Mental Examination.* – The EEOC next argues that no good cause for a mental examination exists because (1) approximately three and a half years have passed since Connolly's termination from L-3 and (2) Connolly underwent a fitness for duty evaluation (the "Fitness Evaluation") while he was still employed with L-3. Neither argument is availing.

The EEOC first contends that Connolly was terminated from L-3 over three years ago and that a mental examiner cannot retrospectively assess his mental condition. But this argument is premature: it concerns the future admissibility and reliability of Dr. Clayton's expert opinions rather than the existence of good cause for the examination under Rule 35. *See Chaney v. Venture Transp., Inc.*, Civ. Action No. 03-2885, 2004 WL 445134, at *1 (E.D. La. Mar. 11, 2004) (rejecting plaintiff's argument that Rule 35 medical examiner-expert was biased and noting such arguments should be presented via *Daubert* challenge or cross-examination of expert at trial). And a physician may provide a retrospective opinion of an individual's condition even if the physician did not examine the individual until after the relevant date. *See, e.g., Generation One, Inc. v. Nw. Mut. Life Ins. Co.*, No. 08-81400-CIV, 2009 WL 10668633, at *1 (S.D. Fla. Dec. 28, 2009) (stating that "a physician

has the capacity to provide a retrospective opinion on clinical depression" (citations omitted)).

The EEOC next argues that good cause for a mental examination under Rule 35 does not exist because Connolly underwent the Fitness Evaluation in 2014 before he was terminated from L-3. The EEOC essentially contends that any medical examination under Rule 35 would be largely duplicative of the Fitness Evaluation. But the purpose of the Fitness Evaluation was to determine: (1) whether Connolly could "return to work and perform his job duties without experiencing repetitive psychologically related absences" and (2) whether Connolly was a " potential threat toward others in the workplace." Def.'s App. in Supp. of Mot. to Compel Mental Exam. 47 [28]. The author of the report did not recommend any reasonable accommodations. And the Fitness Evaluation did not address the disputed issue in this case: whether Connolly was qualified to perform the job with or without reasonable accommodations. L-3 should not have to rely on the Fitness Evaluation as its sole assessment of Connolly's mental condition to prepare its defense. L-3 has thus shown good cause for a mental examination.

Because Connolly's mental condition is in controversy, and because L-3 has shown good cause for a mental examination under Rule 35, the Court grants L-3's motion to compel a mental examination of Connolly.

### III. THE COURT GRANTS IN PART AND DENIES IN PART THE MOTION TO COMPEL SIGNED AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

L-3 next moves under Federal Rule of Civil Procedure 34 to compel the EEOC to produce a completed and executed authorization for the release of Connolly's protected health information. The Court grants in part and denies in part L-3's motion.

#### A. Rule 34 is a Proper Mechanism for Obtaining a Signed Authorization

As an initial matter, Federal Rule of Civil Procedure 34 is a proper mechanism for obtaining a signed authorization. Rule 34(a) provides in relevant part:

> A party may serve any other party a request within the scope of Rule 26(b):
>
> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
>
> (A) any designated documents or electronically stored information . . . stored in any medium from which information can be obtained either directly or indirectly or, if necessary, after translation by the responding party into a reasonable usable form . . . .

FED. R. CIV. P. 34(a). Generally, a party cannot invoke Rule 34 to require another party to create or prepare a new document solely to produce it. But the Fifth Circuit has previously suggested that Rule 34 may be an appropriate vehicle by which to require a party to sign an authorization for release. *McKnight v. Blanchard*, 667 F.2d 477, 481–82 (5th Cir. 1999) (noting request for signed authorization form under Rules 33 and 36 could have been granted under Rule 34)). Since *McKnight*, district courts have "split as to the issue of whether Rule 34 is a proper vehicle by which a party may be required to sign an authorization for the release of medical . . . records, even if those records are relevant to the claims or defenses at

issue." *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 227 (N.D. Tex. 2016). The parties have not identified any subsequent Fifth Circuit precedent expressly deciding the issue. But the Court agrees with *Mir* that written authorizations for release may be compelled under Rule 34 because they compel parties to disclose documents that are within their control. *See id.* at 229. Signing an authorization for release is thus an act that can be construed as production of a document. *Id.* When L-3 requested that the EEOC produce the signed authorization under Rule 34, it employed the proper mechanism for obtaining the authorization.

### B. Connolly's Medical Records from 2008 to the Present Are Relevant to the Parties' Claims and Defenses

L-3 seeks disclosure of Connolly's medical records from 2007 to the present. The EEOC asserts claims under the ADA involving alleged discrimination based on Connolly's mental condition in connection with his employment at L-3. Connolly began working for L-3 on June 2, 2008. Connolly's medical records from June 2, 2008 to the present are thus relevant to the determination of when Connolly became disabled and whether his maladies precluded him from performing the essential functions of his position with or without a reasonable accommodation. *See Cannon*, 813 F.3d at 590 (setting forth elements of ADA claim). Accordingly, the Court grants L-3's motion to compel signed authorization for the release of Connolly's medical records only from June 2, 2008 to the present.

### C. L-3's Counsel May Not Conduct *Ex Parte* *Communications with Connolly's Physicians*

L-3's proposed authorization also includes a provision permitting its counsel to have *ex parte* contact with Connolly's physicians. L-3 asserts that communicating directly with Connolly's physicians outside of formal discovery will make discovery more efficient and less expensive. But as other courts have recognized, permitting defense counsel *ex parte* access to a plaintiff's physicians presents serious concerns:

> When a treating physician is interviewed ex parte by defense counsel, there are no safeguards against the revelation of matters irrelevant to the lawsuit and personally damaging to the patient, and the potential for breaches in confidentiality can have a chilling effect upon the critically important underlying relationship. Such interviews also create situations which invite questionable conduct. They may disintegrate into a discussion of the adverse impact the jury award may have on the rising cost of medical insurance rates. They may result in attempts to dissuade the doctor from testifying. They may result in defense counsel abusing the opportunity to interrogate the physician by privately inquiring into facts or opinions about the patient's mental and physical health or history which might neither be relevant to the law suit nor lead to the discovery of admissible evidence.

*Horner v. Rowan Cos., Inc.*, 153 F.R.D. 597, 601 (S.D. Tex. 1994) (citations omitted) (prohibiting, despite plaintiff's signing unrestricted general medical release, "private ex parte interviews between defense counsel and plaintiff's treating physician unless, with advance notice thereof, plaintiff specifically and unconditionally authorizes same").

Here, L-3 has articulated no need for *ex parte* contact with Connolly's physicians that justifies requiring Connolly to specifically authorize the communications and any attendant risks. This is especially so given that L-3 will already have access to Connolly's medical records from 2008 until the present. To the extent that L-3 requires further information or

explanations of Connolly's medical records from Connolly's physicians, L-3 may communicate with them via formal discovery processes. And the parties are free to agree on informal discovery proceedings in which L-3's counsel confers with Connolly's physicians in the presence of the EEOC. Furthermore, even if the Court did compel the EEOC to produce such a signed authorization, the EEOC could nevertheless "contact the physicians and advise them that notwithstanding the medical authorizations signed by [Connolly], [each] doctor has the discretion to decline to be interviewed or to give any oral information except by formal deposition." *Alston v. Greater Se. Cmty. Hosp.*, 107 F.R.D. 35, 38 (D.D.C. 1985). As a result, any authorization would effectively be a nullity. The Court thus denies L-3's motion to compel the EEOC to produce a signed authorization permitting L-3's counsel to have *ex parte* contact with Connolly's physicians.

### *D. The Court Denies L-3's Request for Expenses and Attorneys' Fees*

Finally, L-3 moves under Federal Rule of Civil Procedure 37(a)(5)(A) for an award of the expenses, including attorneys' fees, it incurred in moving to compel production of the signed authorization. Rule 37(a)(5)(A) provides that if a court grants a motion to compel, or if the party resisting discovery provides the requested disclosure or discovery after the motion to compel is filed:

> the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> . . .

>   (ii) the opposing party's nondisclosure, response, or objection was substantially justified . . . .

FED. R. CIV. P. 37(a)(5)(A).

Since *McKnight*, "district court decisions in this circuit and elsewhere have split as to the issue of whether Rule 34 is a proper vehicle by which a party may be required to sign an authorization for the release" of medical records. *Mir*, 319 F.R.D. at 227 (citations omitted). And the parties have not identified any subsequent Fifth Circuit decision explicitly deciding the issue. In the absence of binding precedent rejecting its arguments, the EEOC was substantially justified in opposing L-3's motion to compel. The Court thus denies L-3's request for expenses and attorneys' fees.

## CONCLUSION

The Court grants L-3's motion to compel a mental examination of Connolly. The examination shall consist of a structured and unstructured interview concerning family history, mental status, medical history, controlled substances and alcohol usage, and other topics related to Connolly's mental condition. Dr. Clayton may also conduct one psychological test, the Substance Abuse Subtle Screening Inventory, which will require approximately 20 minutes. The complete examination shall last no more than approximately four (4) hours, and no individuals other than Dr. Clayton, any required members of Dr. Clayton's staff, and Connolly shall be present at the examination. The examination shall take place at Dr. Clayton's office at 270 Miron Drive, Southlake, Texas, 76092 within the next twenty (20) days, subject to a mutually agreeable date and time for Connolly and Dr. Clayton. The Court also grants in part and denies in part L-3's motion to compel the

EEOC to produce a signed authorization for the release of Connolly's medical records. The EEOC shall produce a signed authorization for the release of Connolly's medical records dating back only to June 2, 2008. The EEOC need not produce a signed authorization granting L-3's counsel permission to conduct *ex parte* communications with Connolly's physicians.

Signed July 24, 2018.

_____
David C. Godbey
United States District Judge